```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
IN RE WORLDCOM, INC. SECURITIES           :    MASTER FILE
LITIGATION                                :    02 Civ. 3288 (DLC)
                                          :
This Document Relates to:                 :       OPINION
                                          :       AND ORDER
ALL ACTIONS                               :
                                          :
----------------------------------------- X
```

Appearances:

For Timothy J. and Kathy M. Dolata:
Sean Lanphier
Mallery & Zimmerman, S.C.
731 North Jackson Street, Suite 900
Milwaukee, Wisconsin 53202-4697

For the Citigroup Defendants:
Martin London
Richard A. Rosen
Brad S. Karp
Eric S. Goldstein
Joyce S. Huang
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Peter K. Vigeland
Wilmer, Cutler, Pickering, Hale & Dorr LLP
399 Park Avenue
New York, New York 10022


DENISE COTE, District Judge:

Timothy J. Dolata ("Dolata") and Kathy M. Dolata seek an order affirming their purported request for exclusion from the class in this consolidated securities class action arising from the collapse of WorldCom, Inc. ("WorldCom"). In the alternative, the Dolatas request an extension of their time to request exclusion from the class. For the reasons described below, the Dolatas' motions are denied.

Background

The facts giving rise to the WorldCom consolidated class action are well known and have been described in many prior Opinions.[1] On August 15, 2002, WorldCom class actions were consolidated and the New York State Common Retirement Fund was designated Lead Plaintiff. The consolidated class action was certified on October 24, 2003. See In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267 (S.D.N.Y. 2003). The certified class consists of all persons and entities who purchased or otherwise acquired publicly traded securities of WorldCom during the period beginning April 29, 1999 through and including June 25, 2002, and who were injured thereby.

Once the class was certified, class members received a December 11, 2003 Notice of Class Action (the "Notice"). A sample Request for Exclusion from the Class (the "Exclusion Form") accompanied each Notice. The Notice specified that the Exclusion Form "must be mailed by certified or overnight mail" to the address of the Garden City Group ("GCG"), the WorldCom class action claims administrator, by February 20, 2004. This date was the original deadline by which class members wishing to opt out of the class action were required to do so. On February 3, 2004,

---

[1] See, e.g., In re WorldCom, Inc. Sec. Litig., 352 F. Supp. 2d 482 (S.D.N.Y. 2005) (summary judgment opinion regarding defendant Arthur Andersen LLP); In re WorldCom, Inc. Sec. Litig., 346 F. Supp. 2d 628 (S.D.N.Y. 2004)(summary judgment opinion regarding the Underwriter Defendants); In re WorldCom, Inc. Sec. Litig., 294 F. Supp. 2d 392 (S.D.N.Y. 2003) (dealing with various defendants' motions to dismiss).

the Second Circuit extended the opt-out date until thirty days after it issued its ruling on an interlocutory appeal from a denial of remand motions made in some of the Individual Actions which had been consolidated for pretrial purposes with the class action. See In re WorldCom, Inc. Sec. Litig., 2004 WL 2591402, at *5 (S.D.N.Y. Nov. 12, 2004). Following affirmance of the remand decision, and pursuant to an Order of June 16, 2004, the opt-out period was rescheduled to close on September 1, 2004.

Meanwhile, in May 2004, the Lead Plaintiff and the Citigroup Defendants[2] announced that they had reached a settlement for $2.575 billion (the "Citigroup Settlement"). After preliminary approval of this settlement, class members received an August 2, 2004 Notice of Proposed Settlement ("Settlement Notice"), which described the process for submitting proofs of claim and the proposed judgment and bar order. The Settlement Notice indicated that a Special Notice was being provided "to all persons who previously requested to be excluded from the Class, but who may now wish . . . to revoke their prior request for exclusion." It also noted that the opt-out date had been extended to September

---

[2] The Citigroup Defendants includes Citigroup, Inc., Citigroup Global Markets Inc. f/k/a Salomon Smith Barney Inc. ("SSB"), Citigroup Global Markets Limited f/k/a Salomon Brothers International Limited, and Jack B. Grubman. SSB was a lead underwriter on two massive WorldCom bond offerings, and Grubman was an SSB telecommunications analyst who strongly encouraged investors to purchase WorldCom securities. See WorldCom, 2004 WL 2591402, at *1-*2.

3

1, 2004.  The Special Notice was in fact sent to all class members who had already opted out of the class action.

On November 12, 2004, the Citigroup Settlement received final approval by the Court.  See WorldCom, 2004 WL 2591402.  The Judgment issued pursuant to the settlement contains a bar on claims by class members against the Citigroup Defendants.  The Judgment provides that "[c]lass members . . . are hereby permanently barred and enjoined from instituting, commencing or prosecuting . . . any Released Claims against any of the Released Parties."  Released Parties are defined to include the Citigroup Defendants and their "present and former employees."  Released claims include

> all claims of every nature and description . . arising out of or relating to investments . . . in securities issued by WorldCom . . ., including without limitation all claims arising out of or relating to any analyst research reports or other statements made or issued by the Citigroup Defendants concerning WorldCom, any disclosures, registration statements or other statements by WorldCom, as well as all claims asserted by or that could have been asserted by Plaintiffs or any member of the Class in the Action against the Citigroup Releasees . . . .

The Dolatas' Claim to Have Opted Out of the Class Action

The Dolatas wish to pursue their claims against the Citigroup Defendants in a National Association of Securities Dealers ("NASD") arbitration proceeding.  They wish to opt out of the class because, as they concede, their arbitration claims

against the Citigroup Defendants are barred by the November 12, 2004 Order issued pursuant to the Citigroup Settlement.

Based on the submissions of the parties and the evidence taken at a February 24, 2005 hearing, the following constitutes the findings of facts concerning the Dolatas' petition. The Dolatas filed an arbitration action against SSB in June 2003. Their Amended Statement of Claim, dated December 19, 2003, contains securities law claims under federal and Wisconsin law, a breach of fiduciary duty claim, and other claims arising under state law. The Dolatas allege that SSB and Jack Grubman, an SSB analyst, exaggerated the financial strength of WorldCom and other telecommunications companies to attain lucrative investment banking assignments. The Dolatas lost a significant amount of money on WorldCom stock and other securities that they claim were given "unduly favorable ratings."

The Dolatas received the class action Notice by mid-January 2004, along with nine Exclusion Forms. Dolata, an attorney, sent a letter on January 26, 2004 regarding the decision to opt out and the Exclusion Forms to the attorney representing the Dolatas in the arbitration proceeding, Sean Lanphier. Dolata discussed the matter with Lanphier the following day, asking him, among other things, whether it would be sufficient if he returned one Exclusion Form rather than all nine forms. Dolata and Lanphier agreed that Dolata would send back one Exclusion Form to opt out of the class. Despite his agreement with Lanphier and his desire

5

to pursue his arbitration claim against SSB, Dolata has not shown that he in fact mailed the Exclusion Form.[3]

Dolata participated in an NASD mediation session with the Citigroup Defendants on August 12, 2004. Dolata was informed in January 2005 by counsel for the Citigroup Defendants that the Dolatas had not opted out of the class. Upon learning this, Dolata telephoned GCG, the claims administrator. He spoke with Dena DeFuria, an employee of GCG.[4] The next day, Dolata was contacted by Carline Mordan, another employee of GCG, who informed him that no record of a communication from Dolata could be located.[5] GCG has conducted a search, has not located any

---

[3]Dolata testified at the February 24 hearing that he hand-addressed an envelope containing one Exclusion Form and dropped it into a mailbox on his way to work. He recounted details such as addressing a second envelope after failing to leave enough room on the first envelope for the full address of the claims administrator. Dolata conceded, however, that he did not follow the mailing process described in the Notice, did not obtain a certified mailing receipt or use overnight mail, and did not even photocopy the Exclusion Form before mailing it. In August 2004 he received the Settlement Notice containing the information that class members would receive a Special Notice if they had opted out. Dolata admits he did not receive a Special Notice.

[4]Dolata testified that Defuria told him that her computer indicated that GCG had received a communication from Dolata, but that she could not access it. An affidavit from Defuria disputes this. Considering all of the evidence, Dolata's recollection of this conversation is not reliable, and is certainly insufficient to establish that he mailed an Exclusion Form, much less that one was received by GCG.

[5]Dolata testified that Mordan told him that his sending in a single Exclusion Form would have rendered his request for exclusion incomplete. Mordan denies ever making such a statement to Dolata. Jack R. DiGiovanni, director of operations for GCG, represents that submitting only one exclusion form would not have

6

Exclusion Form for the Dolatas, and has no record that it received the Dolatas' Exclusion Form.

On February 7, 2005, the Dolatas filed their motion requesting an Order affirming that they have in fact opted out of the class. In the alternative, they request that they be allowed to opt out of the class under Rule 6(b)(2), Fed. R. Civ. P., and the doctrine of excusable neglect. In opposition, the Citigroup Defendants argue that they would be prejudiced if the Court were to find that the Dolatas timely opted out, because numerous similarly situated arbitration claimants would be able to gain exclusion from the class "based only on their own unsupported statement that they submitted a request for exclusion." In a letter of February 22, 2005, the Lead Plaintiff also takes the position that the Dolatas' motion should be denied. The Dolatas have agreed to an adjournment of their arbitration proceeding pending this decision.

## Discussion

The Dolatas make two requests. They petition for a finding that they did opt out of the class on a timely basis. Alternatively, they seek an extension of the time to opt out.

---

rendered the Dolatas' request for exclusion invalid. Again, Dolata's testimony is not reliable. Given the care with which the GCG has functioned on this assignment, it is not credible that it would have received a single Exclusion Form and chosen to ignore it and remove all computerized evidence of its receipt, simply because it expected more than one form to be returned.

7

Dolata's Claim to Have Mailed In the Exclusion Form

It is undisputed that pursuing an individual action or arbitration does not constitute notice of an election to opt out of a class action. See, e.g., Berman v. L.A. Gear, Inc., No. 91 Civ. 2653 (LBS), 1993 WL 437733, at *5 n.1 (S.D.N.Y. Oct. 26, 1993) (refusing to recognize an opt-out by a class member who was maintaining an individual action before the ruling court), aff'd, 29 F.3d 621 (2d Cir. 1994); Supermarkets Gen. Corp. v. Grinnell Corp., 59 F.R.D. 512 (S.D.N.Y. 1973) (same), aff'd, Manhattan-Ward, Inc. v. Grinnell Corp., 490 F.2d 1183 (2d Cir. 1974).  If the filing of a separate action were treated as an irrevocable election to opt out, class members would risk forfeiting their opportunity to participate in the class action before receiving official notice that the class action even existed.  Conversely, without a firm opt-out date, litigants could wait to see if the class action resulted in a more favorable than anticipated resolution before choosing whether to continue with their own litigation.  See In re Four Seasons Sec. Laws Litig., 493 F.2d 1288, 1291 (10th Cir. 1974).

Rule 23(c)(2), Fed. R. Civ. P., provides that a judgment shall bind class members who have not requested exclusion from the action.  The Rule provides that a court must direct to the class "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Id.  Among the information to be

8

included in the class action notice is the fact "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded." Fed. R. Civ. P. 23(c)(2)(B) (emphasis added).

Rule 23 gives a court the power to prescribe the procedures a class member must follow to opt out of a class action. If there is a dispute about whether a class member has followed the appropriate opt-out procedures, the sparse case law on the issue suggests, and the practicalities of class action administration require, that the burden be on the class member to establish that he or she made a sufficient effort to communicate an intent to opt out through the appropriate channels. The class member must show that notice was effectively and timely communicated. See Four Seasons, 493 F.2d at 1291. Because flexibility in making this determination is appropriate, "any written evidence" containing a "reasonable indication of a desire to opt out ought to be sufficient." Id.; see also Plummer v. Chemical Bank, 886 F.2d 654, 657 n.2 (2d Cir. 1982)("Any reasonable indication of a desire to opt out should suffice."); In re Prudential-Bache Energy Income Partnerships Securities Litigation, No. MDL 888, 1995 WL 263879, at *2 (E.D. La. May 4, 1995). Although finding the case a "close one," the Seventh Circuit affirmed a district court's determination that a class member had not opted out where he sent a carbon copy of his letter requesting exclusion to the defendant but there was "no record" that it had ever been

9

"received" by the court as required. Sanders v. John Nuveen & Co., 524 F.2d 1064, 1074-75 (7th Cir. 1975), vacated on other grounds, 425 U.S. 929 (1976). In sum, the testimony of a class member, without some documentary proof of mailing, will seldom, if ever, be sufficient to meet the burden of showing a timely request to opt out. This is particularly true when, as here, the court-approved notice to the class prescribed methods of mailing that would have provided compelling proof of mailing.

A case cited by the Citigroup Defendants involves facts similar to those here. In Prudential-Bache, the court refused to find effective a number of elections to opt out supported only by affidavits, stating that "once the affidavit of [the class member] requesting a late opt out is challenged, the Court must require that the investor produce some additional proof that the opt-out form properly completed was mailed in a timely manner to the correct address." Prudential-Bache, 1995 WL 263879, at *2 (emphasis in original).

Dolata has not carried his burden of showing that he mailed in a request for exclusion. There is no documentation of Dolata's mailing of the Exclusion Form, documentation that Dolata could have easily obtained had he chosen to mail in the exclusion form via certified or overnight mail.[6] Although the evidence

---

[6]Dolata does not even possess a photocopy of his completed Exclusion Form. While possession of a copy would not have been sufficient to carry the Dolatas' burden, the absence of such a copy is particularly telling given that Dolata is an attorney and

10

regarding Dolata's communications with his attorney establishes that Dolata intended to opt out of the class, it does not prove that Dolata actually mailed the Exclusion Form; Dolata could have failed to do so because he forgot or mistakenly believed his attorney would act for him. An intent without a sufficient effort to communicate that intent is insufficient.

There is no credible evidence that GCG ever received a communication from Dolata before the opt-out deadline. Dolata's self-serving recollection of a statement by a GCG employee is insufficient in the face of clear evidence that the computerized records of GCG contain no indication that it ever received an Exclusion Form from Dolata. In sum, the Dolatas have not met their burden to establish that they made a sufficient effort to communicate their desire to opt out of the class within the lengthy opt-out period.

Each of the cases cited by the Dolatas is distinguishable. In <u>In re Brand Name Prescription Drugs Antitrust Litig.</u>, 171 F.R.D. 213 (N.D. Ill. 1997), the exclusion form was mistakenly sent to the clerk of court rather than to the claims administrator. <u>Id</u>. at 215. The court ruled that this effort, among others, sufficiently demonstrated the class member's intent to opt out of the class action. <u>Id.</u> at 216. A misdirected Exclusion Form may have been sufficient to verify that Dolata

---

would be expected to have formed the habit of creating and maintaining records reflecting important matters.

11

attempted to communicate his intent to opt out, but no such proof is present here.

The second case on which the Dolatas rely is inapposite; it relies on a finding of excusable neglect.[7]  In Four Seasons, because a class member was awaiting a response to its inquiry sent to the bankruptcy trustee for the defendant as to whether the class member would be allowed to press its second lawsuit if it did not opt out of the class, the formal request for exclusion was tendered two weeks late.  Finding that both the defendant and counsel for the class plaintiffs knew prior to the effective date that the class member intended to opt out, and that the bankruptcy trustee's delay in responding to the inquiry contributed to the delay in sending the exclusion request, the trial court found that excusable neglect justified an enlargement of the time to opt out.  Four Seasons, 493 F.2d at 1290.  As in Brand Name Prescription Drugs, the party who desired to opt out had clearly communicated its intent -- here, by sending correspondence to the bankruptcy trustee for the defendant.

To allow a party's testimony alone to establish an effort to opt out would set a troubling precedent in this enormous class action litigation.  Thousands of individuals are currently pursuing arbitration claims against the Citigroup Defendants; several hundred such arbitration claimants have not opted out of

---

[7]The Dolatas' argument that excusable neglect warrants an extension of the opt-out period is addressed below.

12

the class action.  Finding the testimony of a class member sufficient to warrant exclusion from the class invites false claims of mailing.  Without a requirement of documentary corroboration of a class member's efforts to opt out scores of individual credibility determinations may be necessary.  There is no inequity in the imposition of a requirement of documentary corroboration, particularly in light of the fact that the Notice accompanying the Exclusion Form clearly specified certified or overnight mail as a method for providing notice.  Certified or overnight mail would have provided a class member with documentation of an exclusion request with minimal cost and effort.

Excusable neglect

In the alternative, the Dolatas submit that they ought to be granted an extension of time to excuse themselves from the class under Rule 6(b)(2), Fed. R. Civ. P., and the doctrine of excusable neglect.  In <u>Pioneer Investment Services Co. v. Brunswick Associates Ltd.</u>, 507 U.S. 380 (1993), the Supreme Court noted that a finding of excusable neglect is essentially an equitable determination.  The <u>Pioneer</u> Court set forth several factors to be considered in connection with a finding of excusable neglect: (1) the danger of prejudice to the party opposing the extension, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the

13

delay, including whether it was within the reasonable control of the party seeking the extension, and (4) whether the party seeking the extension acted in good faith. Id. at 395.

In Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355 (2d Cir. 2003), the Second Circuit noted that the reason for the delay is the most significant of the four factors, and that in the face of a clear rule, a failure to follow the rule will rarely be excused. It observed that

> we and other circuits have focused on the third factor: the reason for the delay, including whether it was within the reasonable control of the movant. We have noted that the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule and held that where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in ordinary course, lose under the Pioneer test.

Id. at 366-67 (citation omitted). Essentially, however, the determination of whether there has been excusable neglect is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." Id. at 366 (citation omitted).

Courts should be particularly chary of extending an opt-out deadline through an application of the doctrine of excusable neglect. Extensions "undermine the finality of judgments entered [in class actions] and . . . discourage settlement of such actions. Defendants would be loath to offer substantial sums of money in compromise settlements of class actions unless they can rely on the notice provisions of Rule 23 to bind class members."

14

Denney v. Jenkins & Gilchrist, No. 03 Civ. 5460 (SAS), 2005 WL 388562, at *23 (S.D.N.Y. Feb. 18, 2005) (citation omitted).

Because Dolata has not carried his burden to show that he mailed the Exclusion Form to GCG, the Dolatas must show that the failure to do so should be excused. Dolata has not provided any reason for his failure to opt out within the extensive period allowed in this action. His mistaken belief that he had mailed the Exclusion Form does not excuse his failure to take the relatively simple steps required to effect a mailing and create a reliable record of that mailing. The reason for delay was entirely within Dolata's control.

The remaining Pioneer factors also weigh against the Dolatas. There is considerable prejudice to the Citigroup Defendants, who paid an historic sum to settle the WorldCom class action litigation, if the deadline for the opt-out period is not enforced. Dolata had months to opt out and did not bring this application for months after the close of the opt-out period. Even if Dolata were able to show that he acted in good faith, that would be insufficient to justify an extension of the time to opt out.

## Conclusion

The Dolatas' motion for an order affirming their request for exclusion from the class or, in the alternative, for an order extending their time to request exclusion from the class is

15

denied. The cross-motion of the Citigroup Defendants to enjoin the Dolatas from prosecuting their arbitration claims is granted.

SO ORDERED:

Dated: New York, New York
May 5, 2005

                                      /s/ Denise Cote
                                          DENISE COTE
                                   United States District Judge