UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
IN RE WORLDCOM, INC. SECURITIES       :     MASTER FILE
LITIGATION                            :     02 Civ. 3288 (DLC)
                                      :
This Document Relates to:             :     OPINION & ORDER
                                      :
ALL ACTIONS                           :
                                      :
------------------------------------- X

Appearances:

For Shan C. Sun and Colette C. Sun:
Michael A. Levin
Rivergate Plaza
444 Brickell Avenue
Suite 51, PMB 217
Miami, FL 33131

For the Citigroup Defendants:
Martin London
Richard A. Rosen
Brad S. Karp
Eric S. Goldstein
Joyce S. Huang
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Peter K. Vigeland
Wilmer, Cutler, Pickering, Hale & Dorr LLP
399 Park Avenue
New York, New York 10022

DENISE COTE, District Judge:

In response to an April 20, 2005 Order to Show Cause, respondents Shan C. Sun and Colette Sun (the "Suns") argue that they should not be enjoined from pursuing their claims relating to investments in WorldCom, Inc. ("WorldCom") against Salomon

1

Smith Barney Inc. ("SSB"), one of the Citigroup Defendants,[1] in an NASD arbitration proceeding. For the reasons described below, the Citigroup Defendants' application for enforcement of the claims release contained in the November 14, 2004 Judgment issued pursuant to the Citigroup Settlement[2] is granted.

Background

The relevant history of the WorldCom class action was recently described in In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288 (DLC), 2005 WL 1048073 (S.D.N.Y. May 5, 2005). This Opinion incorporates that discussion by reference.

On May 4, 2004, the Suns filed a statement of claim (the "Statement of Claim") and demand for a NASD arbitration seeking more than $3 million in compensatory damages, as well as prejudgment interest and punitive damages, from SSB, who had been the Suns' broker. The Suns premise their claims on the alleged conflict of interest between SSB's investment banking and analyst divisions. Some portion of the damages sought stems from the Suns' investments in WorldCom securities. SSB served its answer on August 4, 2004. September 1, 2004 was the deadline established by the Court for requests to opt out of the WorldCom

---

[1] The Citigroup Defendants include Citigroup, Inc., Citigroup Global Markets Inc. f/k/a Salomon Smith Barney Inc., Citigroup Global Markets Limited f/k/a Salomon Brothers International Limited, and Jack B. Grubman.

[2] See In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288, 2005 WL 2591402 (S.D.N.Y. Nov. 12, 2004).

2

consolidated class action. See In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288 (DLC) (Order of June 16, 2004). It was also the date on which a panel was selected for the Suns' arbitration. On February 10, 2005, the Suns received a letter from counsel for SSB demanding that the Suns dismiss their Statement of Claim due to their failure to opt out of the class action. On February 22, 2005, SSB filed a motion before the NASD to strike the Suns' claims in the arbitration proceeding.

On April 18, 2005, counsel for the Citigroup Defendants submitted a letter application to the Court requesting that an Order to Show Cause be issued to a number of arbitration claimants who had failed to opt out of the class action. An Order to Show Cause was issued to several such claimants, including the Suns, on April 20, 2005. On April 27, 2005, counsel for the Suns submitted a Response to the Order to Show Cause and a cover letter stating the Suns' intent to rest on their submission. For this reason, no hearing was held.

The Suns make three arguments why they should not be enjoined from arbitrating their WorldCom-related claims. First, the Suns contend that, by participating in the arbitration, SSB consented to it and waived its right to object to the proceeding. Second, they argue that the December 3, 2004 Notice of Class Action (the "Notice") and the August 2, 2004 Notice of Class Settlement (the "Settlement Notice") did not provide them adequate time to opt out and "did not clearly and sufficiently spell out what effect, if any, the class action would have on

3

arbitrations already filed and pending . . . and moreover, what effect if any it might have on an arbitration where only the actions of a broker were being challenged, and not the actions of Worldcom directly." (Emphasis omitted.) Finally, the Suns argue that they should be permitted to opt out late pursuant to Rule 60(b)(2), Fed. R. Civ. P., and the doctrine of excusable neglect.

## Discussion

1. Waiver

The Suns argue that SSB's participation in the arbitration proceedings constituted a waiver of its right to object to those proceedings, and that SSB should therefore be estopped from seeking enforcement of the claims release contained in the Judgment issued pursuant to the Citigroup Settlement. A party may waive its right to contest an arbitration by failing to raise a timely objection. See Opals on Ice Lingerie v. Body Lines, Inc., 320 F.3d 362, 368 (2d Cir. 2003).

The Suns' waiver argument fails, however. It would have been logistically impossible for SSB to object to the arbitration until it was already well underway. The Suns filed their Statement of Claim on May 4, 2004, nearly four months before the September 1, 2004 opt-out deadline. SSB answered on August 4, 2004, also before the opt-out deadline had passed. The Citigroup Defendants would not have any ground to contest the Suns' choice to arbitrate until the opt-out period closed and would not have confirmation that the Suns had not opted out until long after

4

that deadline, after all opt-out forms were processed by the administrator and those results communicated to defendants in the action. Given this timeline, the fact that SSB did not raise the opt-out issue before February 2005 cannot be said to constitute a waiver.

The Suns cite a number of cases that hold that once a party consents to an arbitration proceeding, it cannot contest the arbitrability of the claim at a later date. See, e.g., Fortune, Alsweet & Eldridge, Inc., v. Daniel, 724 F. 2d 1355 (9th Cir. 1983) (per curiam); Jordan v. Metropolitan Life Ins. Co., No. 03 Civ. 4110 (SAS), 2004 WL 1752822 (S.D.N.Y. Aug. 4, 2004); Larancuent v. Stainless Partners, Inc., CV-0302884 (SJF), 2003 U.S. Dist. Lexis 23229 (E.D.N.Y. Dec. 18, 2003); Sands Bros. & Co., Ltd. v. Zipper, No. 03 Civ. 7731 (VM), 2003 WL 22439789 (S.D.N.Y. Oct. 27, 2003). In Jordan, an arbitration decision was revisited in a Title VII action by the claimant who initiated the arbitration proceeding, and only after he had received an adverse decision in the arbitration. Analyzing this issue under the doctrine of res judicata, the court noted that the choice of forum had been within the claimant's control, intimating that the newly filed action was merely an attempt to revisit a ruling the claimant disliked.[3] See Jordan, 2004 WL 1752822, at *4-*5.

---

[3] The Suns improperly cite an unpublished opinion, Cecala v. NationsBank Corp., 40 Fed. Appx. 795 (4th Cir. 2002) (per curiam) (unpublished disposition). As in Jordan, the party objecting to the arbitration in Cecala had initiated the arbitration and lost on her claims. Cecala, 40 Fed. Appx. at 797.

Larancuent involved a defendant in arbitration who objected to the arbitrability of the claim after an award had been issued, even though the grounds on which it objected -- the failure to provide twenty days' notice of the hearing -- had existed from the beginning of the proceeding. See Larancuent, 2003 U.S. Dist. Lexis 23229, at *11. In Sands Brothers, the court ruled that an arbitration defendant had waived its right to object to the proceedings because it had waited nine months to do so; an arbitration panel had been selected and discovery and summary judgment practice had occurred. Again, the grounds for defendant's objection had existed from the beginning of the proceeding. See Sands Bros., 2003 WL 22439789, at *2-*3. In Daniel, the party objecting to the arbitration had participated in three arbitration hearing sessions and had even presented evidence before objecting that he had no obligation to arbitrate. Daniel, 724 F.2d at 1356. Given his voluntary participation in the arbitration process over several months, the court found it would be unjust to allow him thereafter to challenge the legitimacy of the process. See id. at 1357. Cases in which a party in arbitration waited to contest the arbitrability of a claim on grounds it could have raised at the beginning, particularly when the party waited until after receiving an adverse substantive determination to raise its objection, are significantly different from the Suns' situation.[4] SSB could not

---

[4] The Suns also cite Hartley v. Stamford Towers Ltd. Partnership, Nos. 92-16802, 92-56528, 1994 WL 463497 (9th Cir.

have voiced its objection early in the proceeding and is not using its objection to escape an adverse outcome. The Suns' argument that SSB waived its right to object to the arbitration must accordingly be rejected.

2. Adequacy of Notice

The Suns contend that the Notice and the Settlement Notice did not clearly inform class members that it was necessary to opt out of the class action if they wished to pursue claims in arbitration based on the actions of a broker. The Suns also argue that the approximately thirty days between the Notice of Settlement and the September 1, 2005 opt-out date gave class members insufficient time to make informed decisions about whether to opt out of the class.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them

---

Aug. 26, 1994) (unpublished disposition), which upheld a district court's injunction against an arbitration proceeding covered by two settlement bar orders, see Hartley, 1994 WL 463497, at **4, by way of contrast. They contend that the objection to the arbitration by the defendants in Hartley was much more timely than that of the Citigroup Defendants in this matter. The Hartley defendants were able to object to the arbitration immediately due to the procedural posture of the class actions that had been settled; a judgment had been entered almost a year before the class member filed her arbitration in one of the two class actions that were at issue, and she had even received and cashed a settlement check from that class action. Id. at **2.

an opportunity to present their objections." <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950). In a class action, pursuant to Rule 23(c), Fed. R. Civ. P., "the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." A notice of class action must inform class members of, <u>inter alia</u>, the nature of the action, the definition of the class, and when and how a class member may request exclusion, and it must convey that a judgment will have a binding effect on class members. <u>Id.</u>

Here, the Notice described the claims against the Citigroup Defendants, then known as the Salomon Defendants, in terms quite similar to the allegations in the Suns' Statement of Claim.[5] The

---

[5] The Notice states, in relevant part:

> The Complaint asserted that the Salomon Defendants, among other things, failed to disclose material conflicts of interest that existed in their relationships with WorldCom . . . . As alleged in the Complaint, in order to procure WorldCom's lucrative investment banking business, Salomon, its corporate affiliates and Salomon's market analyst Grubman agreed to . . . issue highly favorable research reports regarding WorldCom . . . . The Complaint further alleged that, based on this <u>quid pro quo</u> relationship, Salomon received a significant amount of WorldCom's investment banking business . . . .
> The Complaint further alleged that Grubman, who was held out by Salomon as an independent telecommunications analyst, knew or recklessly disregarded the substantial financial problems at WorldCom. It asserted that the analyst reports issued by Grubman regarding WorldCom contained knowingly or rechlessly false descriptions of WorldCom's financial condition and failed to disclose the quid pro quo relationship between Salomon and WorldCom . . . .

8

Notice clearly defines the class as "[a]ll persons and entities who purchased or otherwise acquired publicly traded securities of WorldCom during the period beginning April 29, 1999 through and including June 25, 2002, and who were injured thereby," and further states that "[i]f plaintiffs who have filed Individual WorldCom Actions and meet the definition for Class membership . . . wish to continue to prosecute their Individual WorldCom Actions, they must file a request for exclusion from the class." The Notice makes clear that if a plaintiff pursuing separate litigation does not request exclusion, "that plaintiff will be precluded from pursuing his Individual WorldCom Action." The Notice was mailed nearly nine months before the eventual opt-out date, giving class members an extraordinarily long period of time to review the Notice and to seek legal advice if warranted.

Any lingering doubt over whether arbitration claimants needed to opt out to pursue their claims should have been dispelled by the Settlement Notice, which was sent to class members approximately thirty days before the opt-out deadline, an adequate notice period in itself. In Berman v. L.A. Gear, Inc., No. 91 Civ. 2653 (LBS), 1993 WL 437733, at *4 (S.D.N.Y. Oct. 26, 1993), the court rejected a claim by a class member that he had not been given a reasonable amount of time to opt out when the defendants sent him a courtesy copy of the settlement agreement less than three weeks before the close of the opt-out period, and his broker mailed the notice of settlement to him only a week before the opt-out date. Id. at *2, *4-*5.

9

The Settlement Notice clearly states:

> If you are a member of the Class and you wish to pursue an <u>arbitration</u> or an individual lawsuit against Citigroup Defendants or any of the parties identified . . . as Citigroup Releasees, you must opt out of the Class. The mere filing of an <u>arbitration</u> or an individual lawsuit does not operate as an exclusion from the class and a Class member's failure to opt out will result in the release of the Released Claims . . . by that Class member . . . .

(Emphasis supplied.) The Released Claims against the Citigroup Defendants, including SSB, are defined in the Settlement Notice as "all claims of every nature and description . . . arising out of or relating to investments . . . in securities issued by WorldCom . . . including without limitation all claims arising out of or relating to any analyst research reports or other statements made or issued by the Citigroup Defendants concerning WorldCom." This expansive definition leaves no ambiguity as to whether claims against SSB as a broker, rather than merely as an underwriter, would be covered.

The Suns have provided nothing but conclusory assertions in support of their argument that they were not provided clear and timely notice of the fact that they needed to opt out of the class action to pursue their arbitration claims. In reality, they were given extraordinarily clear and timely notice. Their argument on this count must accordingly be rejected.

3. Excusable Neglect

The Suns also move for an extension of time to excuse themselves from the class pursuant to Rule 60(b)(2), Fed. R. Civ.

10

P., and the doctrine of excusable neglect. A finding of excusable neglect is essentially an equitable determination. Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380 (1993). The Supreme Court has articulated four factors to be considered in connection with a finding of excusable neglect: (1) the danger of prejudice to the party opposing the extension, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the party seeking the extension, and (4) whether the party seeking the extension acted in good faith. Id. at 395.

The Second Circuit has noted that the reason for the delay is the most significant of the four factors, and that in the face of a clear rule, a failure to follow the rule will rarely be excused:

> [W]e and other circuits have focused on the third factor: the reason for the delay, including whether it was within the reasonable control of the movant. We have noted that the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule and held that where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in ordinary course, lose under the Pioneer test.

Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366-67 (2d Cir. 2003) (citation omitted).

As explanation for their failure to opt out, the Suns essentially recapitulate their first two arguments, both of which have already been rejected. On the other side of the scale, this Court must weigh the potential prejudice to the Citigroup

11

Defendants, who may face more arbitration claimants who have not opted out of the class action, as well as the public policy implications of lax enforcement of an opt-out date. Courts should hesitate to extend an opt-out deadline through an application of the doctrine of excusable neglect because "extensions 'undermine the finality of judgments entered [in class actions] and . . . discourage settlement of such actions. Defendants would be loath to offer substantial sums of money in compromise settlements of class actions unless they can rely on the notice provisions of Rule 23 to bind class members.'" WorldCom, 2005 WL 1048073, at *6 (quoting Denney v. Jenkins & Gilchrist, No. 03 Civ. 5460 (SAS), 2005 WL 388562, at *23 (S.D.N.Y. Feb. 18, 2005) (citation omitted)). Although there is no reason to believe that the Suns did not act in good faith, the equities here do not support a finding of excusable neglect.[6]

Conclusion

The Citigroup Defendants' application for enforcement of the judgment approving the Citigroup Settlement is granted. The

---

[6] The Second Circuit authority cited by the Suns does not command a different conclusion. In In re Painewebber Limited Partnerships Litigation, 147 F.3d 132 (2d Cir. 1998), the court affirmed the district court's determination that a finding of excusable neglect was not appropriate, id. at 136, despite the fact that the class member had been hospitalized when he received the notice of class action and had attributed the remainder of his delay to his seeking legal advice, see id. at 135-36 -- facts that appear more favorable to the class member than those here.

Suns' claims against SSB arising from their investments in WorldCom securities are enjoined as set forth in the accompanying Order.

SO ORDERED:
Dated: New York, New York
       June 15, 2005

                                      DENISE COTE
                        United States District Judge