```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
IN RE WORLDCOM, INC. SECURITIES          :         MASTER FILE
LITIGATION                               :         02 Civ. 3288 (DLC)
                                         :
---------------------------------------- X         OPINION AND ORDER
This Document Relates to:                :
                                         :
WILLIAM C. MOXLEY, and TERESA O.         :
MOXLEY,                                  :
                                         :
           Plaintiffs,                   :
                                         :
      -v-                                :         04 Civ. 0232 (DLC)
                                         :
CITIGROUP GLOBAL MARKETS INC. f/k/a      :
SMITH BARNEY & CO., INC.,                :
                                         :
           Defendant.                    :
                                         :
---------------------------------------- X
```

Appearances:

For Plaintiffs William C. Moxley and
Teresa O. Moxley:

David L. McGee
Peter J. Mougey
Jack W. Lurton, III
Levin, Papantonio, Thomas, Mitchell,
Echsner, & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32501

William S. Shepherd
Shepherd, Smith & Bebel, PC
1314 Texas Avenue, 21st Floor
Houston, TX 77002

For Defendant Citigroup Global Markets,
Inc. f/k/a Salomon Smith Barney:
Martin London
Richard A. Rosen
Brad S. Karp
Eric S. Goldstein
Walter Rieman
Joyce S. Huang
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

and

Peter K. Vigeland
Wilmer Cutler Pickering Hale and Dorr
LLP
399 Park Avenue
New York, NY 10022

DENISE COTE, District Judge:

This Opinion requires a prediction as to whether Georgia's highest court would recognize an action brought by a holder of publicly traded securities. Defendant Citigroup Global Markets, Inc. f/k/a Smith Barney Co. ("Citigroup") has moved to dismiss the action brought under Georgia common law by William Moxley and Teresa Moxley (the "Moxleys") following the collapse of WorldCom, Inc. ("WorldCom"). Finding that Georgia would join the majority view rejecting claims brought under the common law by holders of publicly traded securities, the case is dismissed.

Background[1]

On June 25, 2002, WorldCom announced a massive restatement of its financials. Shortly thereafter it filed for bankruptcy. Even before WorldCom announced its financial restatement, litigation had been filed in the Southern District of New York alleging that WorldCom had violated federal securities laws. That litigation was assigned to this Court. In the months following WorldCom's restatement, multiple lawsuits were filed alleging violations of both federal and state laws. Those actions filed in state courts were removed as "related to" WorldCom's bankruptcy. Actions outside this district were then transferred to this Court by the Judicial Panel on Multi-District Litigation ("MDL Panel").

This Court consolidated all class actions by Order dated August 15, 2002 ("Class Action"). By Order dated December 23, 2002, the Court determined that all individual actions ("Individual Actions") and the Class Action involved common questions of law and fact and that they should be consolidated for pretrial purposes. See In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288(DLC), 2002 WL 31867720 at *1 (S.D.N.Y. Dec. 23,

---

[1] The history of both WorldCom's collapse and the resulting litigation has been described in many prior opinions by this Court. See, e.g., In re WorldCom, Inc. Sec. Litig., 02 Civ. 3288 (DLC), 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) (approval of consolidated class action settlement with Citigroup defendants); In re WorldCom, Inc. Sec. Litig., 346 F. Supp. 2d 628 (S.D.N.Y. 2004) (addressing Underwriter Defendants' motion for summary judgment); In re WorldCom, Inc. Sec. Litig., 294 F. Supp. 2d. 392 (S.D.N.Y. 2003) (deciding a number of defendants' motions to dismiss class action, including the motion of Citigroup, Inc., Salomon Smith Barney and Jack Grubman).

2002). The consolidated WorldCom securities litigation is referred to as the Securities Litigation.

Beginning in the fall of 2003, the defendants in the Securities Litigation began to bring waves of motions to dismiss the Individual Actions.[2] The third tranche in the motions to dismiss was filed beginning on November 5, 2004. That set of motions includes the instant motion to dismiss the Moxleys' complaint.

## The Moxley Action

The Moxleys filed their complaint in the state court of Fulton County, Georgia on September 30, 2003, more than a year after WorldCom's dramatic announcement of its restatement. An amended complaint was filed on October 16, 2003. The amended complaint is the pleading to which the motion to dismiss is addressed and is referred to hereinafter as the Complaint. On November 19, 2003, the defendant removed the action to the United States District Court for the Northern District of Georgia. The action was then transferred by the MDL Panel to this Court on January 8, 2004, and consolidated for pretrial proceedings with the Securities Litigation.

---

[2] The first tranche of motions to dismiss claims in the Individual Actions was resolved through the following Opinions: In re WorldCom, Inc. Sec. Litig., 294 F. Supp. 2d. 431 (S.D.N.Y. 2003); In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288 (DLC), 2003 WL 22790942 (S.D.N.Y. Nov. 25, 2003); In re WorldCom, Inc. Sec. Litig., 308 F. Supp. 2d. 214 (S.D.N.Y. 2004). The second tranche of motions to dismiss claims in the Individual Actions was resolved through the following Opinions: In re WorldCom, Inc. Sec. Litig., 308 F. Supp. 2d. 236 (S.D.N.Y. 2004); In re WorldCom, Inc. Sec. Litig., 308 F. Supp. 2d. 338 (S.D.N.Y. 2004); In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288 (DLC), 2004 WL 315143 (S.D.N.Y. Feb. 20, 2004).

Fact discovery of all defendants in the <u>Securities Litigation</u> ended on July 9, 2004.  On August 6, 2004, the Moxley plaintiffs sent a letter to the Court inquiring whether they would have the opportunity to take the depositions of Mark Daner ("Daner") and William Bennet ("Bennet").  This request was denied because the plaintiffs had not complied with the Court's scheduling order concerning discovery and had not provided a sufficient explanation for failing to do so.  <u>In re WorldCom, Inc. Sec. Litig.</u>, No. 02 Civ. 3288 (DLC), 2004 WL 1836999 (S.D.N.Y. Aug. 17, 2004).

The following facts are taken from the Complaint.  William C. Moxley is a former employee of WorldCom.  He began working for the telecommunications company MCI in 1995, and became an employee of WorldCom when MCI and WorldCom merged in 1997.  He no longer worked for WorldCom at the time he filed this action.  Teresa O. Moxley is Mr. Moxley's wife.  She began working for MCI in 1994, and became a WorldCom employee after the merger.  She was still a WorldCom employee as of the filing of the lawsuit.

Between 1997 and 2000, the Moxleys purchased WorldCom securities through their 401(k) accounts and Mr. Moxley also purchased shares of WorldCom stock for his personal investment account.  In addition, in 1996, 1997 and 1998, Mr. Moxley was granted WorldCom stock options as part of the WorldCom Employee Stock Option Plan. All of the options were vested by February 4, 2000.  As of July 2000, the value of WorldCom stock "had decreased substantially" from its peak in June of 1999, but the

exercise prices for Mr. Moxley's options were still below the price at which WorldCom stock was trading.

In July 2000, Mr. Moxley was invited to attend a luncheon sponsored by Smith Barney & Co., Inc. ("Smith Barney"). In choosing to attend, Mr. Moxley was "primarily" seeking advice on whether it was prudent to exercise his options and use the proceeds of a sale of WorldCom shares to diversify his portfolio. He was also seeking advice on whether to sell the other WorldCom shares he and his wife owned. He does not identify Smith Barney as their broker. During the luncheon Mr. Moxley met with two financial consultants employed by Smith Barney, Daner and Bennet, who offered to provide him with a document called a retirement planner ("Planner") that would advise the Moxleys on future investment decisions. The Moxleys received the Planner on July 20, 2000.

The plaintiffs allege that the Planner advised the Moxleys to hold all of their WorldCom options and shares for a period of at least three years. They further allege that based on the advice from the Planner they decided to forbear exercising their stock options and liquidating their WorldCom holdings.

The Planner, which is incorporated by reference into the Complaint, is a twenty-three page document that bears the following disclaimer at the bottom of nearly every page:

> This analysis is based on information that you provided. The assumptions and projections in this plan are estimates and are meant to serve solely as a guideline. If any of the assumptions used in this plan are not realized, then the projections will be inaccurate. This plan does not offer legal or tax advice and should be reviewed by your legal and tax advisors before any action is taken. Past

6

>       investment performance is not indicative of future
>       investment results.

Using information provided by Mr. Moxley about his and his wife's investments, the Planner sets out a series of "Assumptions," based on a "projected" WorldCom stock price in three years of $95.70 (as opposed to the then current price of $49), and the exercise of Mr. Moxley's stock options in three years. Under this scenario, the Planner projected that Mr. Moxley would have net proceeds of over $1.2 million in 2003. The Planner included pie charts with a comparison between the Moxleys' current and "proposed" asset allocations, which recommended that the Moxleys substantially diversify their investments by moving from being invested solely in equities to a mix of large and small capitalization equities, bonds, and other investments. Finally, the Planner illustrated the benefits of a credit shelter trust.

   The Moxleys premise their claims on Citigroup's failure to disclose a "conflict of interest" between research and investment banking.[3] The Moxleys allege that Citigroup used positive research coverage and optimistic investment advice in an effort to gain investment banking business from WorldCom. The Moxleys allege that they would have exercised their stock options and sold all of their WorldCom stock on July 20, 2000, if they had been informed of the conflicts of interest that lay behind the investment advice contained in the Planner.

---

[3] The conflict of interest allegations were a prominent component of the complaint in the WorldCom Class Action. See In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267 (S.D.N.Y. 2003) (certifying class).

The Moxleys plead claims of fraud, negligent misrepresentation, and negligence under Georgia law.[4]  As part of the third tranche of motions to dismiss claims asserted in the <u>Securities Litigation</u>, Citigroup has moved to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

<u>Discussion</u>

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2), Fed. R. Civ. P.  The purpose of this requirement is to give fair notice of a claim and the grounds upon which it rests so that the opposing party may identify the nature of the case, respond to the complaint, and prepare for trial. <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506, 512 (2002).  Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is "not meant to impose a great burden upon a plaintiff."  <u>Dura Pharms., Inc. v. Broudo</u>, 125 S. Ct. 1627, 1634 (2005).  "The complaint thus need not set out in detail the facts upon which the claim is based."  <u>Twombly v. Bell Atlantic Corp.</u>, 425 F.3d 99, 107 (2d Cir. 2005) (citation omitted).  If it is clear, however, that "no relief could be granted under any sets of facts that could be proved consistent with the allegations," the claim should be dismissed.  <u>Swierkiewicz</u>, 534 U.S. at 514. In construing the complaint, the court must "accept all factual

---

[4] The Complaint also contains claims of breach of fiduciary duty and of the Georgia Securities Act, but the plaintiffs do not resist dismissal of those claims.

8

allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).

"The Rules do establish more demanding pleading requirements for certain kinds of claims." Twombly, 425 F.3d at 107. These claims, including fraud, must "be stated with particularity." Rule 9(b), Fed. R. Civ. P. To comply with the requirements of Rule 9(b), an allegation of fraud must specify: "(1) those statements the plaintiff thinks were fraudulent, (2) the speaker, (3) where and when they were made, and (4) why plaintiff believes the statements to be fraudulent." Koehler v. Bank of Bermuda (New York) Ltd. 209 F.3d 130, 136 (2d Cir. 2000).

All of the plaintiffs' claims arise under Georgia law. Where the law of a state is "uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the...state would resolve the uncertainty or ambiguity." Phansalkar v. Andersen Weinroth & Co., 344 F.3d 184, 199 (2d Cir. 2003) (citation omitted). In doing so, federal courts must give "fullest weight to the decisions of a state's highest court," and "proper regard to the decisions of a state's lower courts." Id. (citation omitted). Federal courts should also consider the decisions of federal courts construing state law, in particular the circuit court within whose jurisdiction the state at issue is located. Id.; Booking v. Gen'l Star Mgmt. Co., 254 F.3d 414, 421 (2d Cir. 2001). Unless another court of appeals has ignored

"clear signals emanating from the state's highest court pointing to a different rule," Factors Etc., Inc. v. Pro Arts, Inc., 652 F.2d 278, 283 (2d Cir. 1981), a federal court is "bound" by another court of appeals' interpretations, while sitting in diversity, of the law of a state within its bounds. Booking, 254 F.3d at 421. Georgia is within the jurisdiction of the Eleventh Circuit Court of Appeals.

All of the plaintiffs' claims are "holder" claims. A "holder" action is one in which the plaintiffs allege that material misrepresentations or omissions caused them to retain ownership of securities that they acquired prior to the alleged wrongdoing. These claims have become more common in reaction to the enactment of the PSLRA (Private Securities Litigation Reform Act of 1995) and SLUSA (Securities Litigation Uniform Standards Act of 1998), legislation which sought to limit perceived abuses in private securities litigation. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, No. 04-1371, slip op. at 8-10 (U.S. Mar. 21, 2006). The question of whether Georgia law recognizes a cause of action for the holders of securities was raised in an earlier motion to dismiss in the Securities Litigation. In re WorldCom, Inc. Sec. Litig., 336 F. Supp. 2d 310 (S.D.N.Y. 2004) ("Weinstein Opinion"), addressed a putative nationwide class action brought on behalf of holders of WorldCom securities under Georgia law. Familiarity with the Weinstein Opinion is assumed.

The Weinstein Opinion observes that Georgia's intermediate appellate courts have required a plaintiff to purchase stock to bring a claim under Georgia's securities statute, id. at 319 (citing Bell v. Sasser, 520 S.E.2d 287, 293 (Ga. Ct. App. 1999); Mack v. Smith, 344 S.E.2d 474, 475 (Ga. Ct. App. 1986)), and that no Georgia case to date has permitted "holder" claims for a common law cause of action. In re WorldCom, Inc. Sec. Litig., 336 F.Supp. at 319. The Weinstein Opinion surveyed the law of jurisdictions around the country and noted that common law claims by holders have been routinely rejected because either damage claims by holders are too speculative, loss causation cannot be shown, or it is too difficult to prove reliance. Id. at 319-20. The few jurisdictions that have allowed "holder" claims to proceed have generally required allegations of specific reliance and/or direct communication between a plaintiff and defendant. Id. at 320-22. Finding that "there is no basis to predict that the Georgia Supreme Court would permit the Weinstein Plaintiffs' "'holder' claims on behalf of a putative nationwide class to go forward," the Geogia common law holder claims in the Weinstein class action were dismissed.[5] Id. at 323.

---

[5] The Supreme Court has recently reiterated the concerns about holder claims first expressed in its seminal decision rejecting holder claims under federal securities law, Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975). "As the Blue Chip Stamps Court observed, class actions brought by holders pose a special risk of vexatious litigation." Merrill Lynch, No. 04-1371, at 14. The Court described such claims as "particularly troublesome." Id.

11

Holder claims were also addressed in another Individual Action within the WorldCom Securities Litigation, an Individual Action brought by a consortium of pension funds under federal and New York law. In re WorldCom Sec. Litig., 382 F.Supp. 549 (S.D.N.Y. 2005) ("NYCERS Opinion"). The NYCERS Opinion noted that while New York common law allows "holder" claims, it only recognizes such claims in situations where justifiable reliance could be shown through "sufficiently direct communication from the defendant to the plaintiff to support a claim that the fraud induced inaction." Id. at 559. The NYCERS Opinion is also incorporated by reference.

Although the Weinstein Opinion addressed claims brought under Georgia law, it addressed those claims in the context of a class action. The Moxley action raises the question of whether the Georgia Supreme Court would allow an individual plaintiff's "holder" claim under Georgia's common law of fraud, negligent misrepresentation, or negligence.[6] The limited guidance provided by Georgia precedent, together with the growing consensus in the common law of other jurisdictions, is sufficient to predict that Georgia's highest court would not recognize a holder claim under Georgia's common law for either a class action or an individual action.

---

[6] Because these three claims must be dismissed for a failure to plead a cognizable theory of damages, it is unnecessary to address the other deficiencies which the defendant asserts also require dismissal of these claims.

While it is undisputed by the parties that a holder claim could not be brought under Georgia's securities statute, decisions interpreting the elements of a statutory cause of action provide only limited guidance in construing a parallel claim under the common law. Federal and state securities statutes reflect a series of judgments by legislatures in the context of a limited kind of fraud claim, one addressed to securities transactions. Those statutes place burdens on parties that they will not encounter in prosecuting or defending against a common law fraud claim, and remove other burdens. To give but one example, it is well-established that plaintiffs bringing a Section 10(b) claim under the Securities Exchange Act of 1934 are entitled to a presumption of reliance, known as the fraud on the market doctrine. Basic Inc. v. Levinson, 485 U.S. 224, 243-47 (1988). Many state securities statutes have been similarly interpreted to include a presumption of reliance, or to eliminate the reliance requirement altogether. See, e.g., Mirkin v. Wasserman, 858 P.2d 568, 579-80 (Cal. 1993); Conn. Nat'l Bank v. Giacomi, 699 A.2d 101, 120 n.37 (Conn. 1997); Allyn v. Wortman, 725 So.2d 94, 101 and n.3 (Miss. 1998); Kaufman v. I-Stat Corp., 754 A.2d 1168, 1197 (N.J. 2000); Everts v. Holtman, 667 P.2d 1028, 1033 (Or. Ct. App. 1983); Gohler v. Wood, 919 P.2d 561, 566 (Utah 1996); Esser Distributing Co. v. Steidl, 437 N.W.2d 884, 887 (Wis. 1989). In interpreting their common law, however, courts have declined to create a presumption of reliance for securities' claims where it would not otherwise exist for common

13

law fraud claims.  See, e.g., Cromer Finance Ltd. v. Berger, 2003 WL 21436164, at *13 (S.D.N.Y. June 23, 2003)(New York law); Kaufman, 754 A.2d at 1197 (New Jersey law); Mirkin, 858 P.2d at 583-84 (California law).  As a result, the bar on holder claims under federal and state statutory schemes does not necessarily doom their recognition under a jurisdiction's common law, although the reasoning underlying their rejection within statutory schemes may nonetheless resonate with common law principles.  See, e.g., Crocker, 826 F.2d at 351 n.5.

Further guidance as to Georgia's treatment of a common law holder claim may be gleaned from Mack, 344 S.E.2d. at 475, which affirmed dismissal not only of a fraud claim brought under Georgia's securities statute, but also the plaintiff's common law fraud claim.  The plaintiff had not alleged a purchase of the securities on which he brought suit.  The common law fraud claim was dismissed because the plaintiff had pleaded "'no special damages'" or "'invasion'" of his person or property by the defendants that was "'legally sufficient to sustain an award of general or nominal damages.'"  Id.  The appellate court adopted that reasoning and cited Foster v. Sikes, 42 S.E.2d 441 (1947), "[a]s to plaintiff's fraud claim."  Mack, 344 S.E.2d at 475.

In Foster, the Georgia Supreme Court dismissed a fraud claim brought by a broker to recover the commission he lost when the defendants did not purchase property he showed to them, and after he had spent an afternoon with the defendants based on their false representation that they intended to buy the property.  The

14

court observed, "[t]here is nothing in the petition in this case to show the value of the time of the plaintiff. It would be a matter of speculation as to whether he might have sold some other person the property in question, or other property, during the time he spent with the defendants." Foster, 42 S.E.2d at 443. The court observed that the plaintiff had not shown that he was harmed in his person, that his business was harmed, or that he was prevented from making a commission by selling the property to someone else. Id. at 444. The court concluded that the plaintiff had not received "an injury as the law can redress." Id.

Although the discussion in Mack is less than pellucid, it appears that the Georgia court rejected the fraud claim principally because a plaintiff asserting that he failed to buy stock as a result of a misrepresentation or omission cannot establish that he was in fact damaged by the misrepresentation or omission. Many other jurisdictions have rejected common law holder claims for essentially similar reasons. In re WorldCom, Inc. Sec. Litig., 336 F. Supp. 2d at 349-50 (collecting authorities).

According to the plaintiffs, the omissions caused them to refrain from exercising their stock options and from selling their WorldCom stock in a falling market. In essence, an accounting fraud within WorldCom, and Citigroup's touting of the WorldCom stock, had inflated the stock's price after the plaintiffs purchased their WorldCom stock, and the plaintiffs

lost the opportunity to profit from that inflation before the stock price collapsed. The harm alleged by the plaintiffs is not that they failed to realize the true value of WorldCom's securities; the true value of WorldCom securities was negligible. Put another way, if the omitted information had been disclosed, then there would have been no market for the stock at an inflated price and no opportunity for plaintiffs to make the profit they seek to achieve through their claim for damages in this lawsuit. Of course, the plaintiffs do not suggest that they would have been entitled to recover damages based on a theory that they alone should have had access to the fraudulently concealed information, a theory akin to insider trading. In contrast, a plaintiff who can demonstrate that she purchased securities in reliance on a misrepresentation or material omission, is able to demonstrate the linkage between the fraud and her damages.

The plaintiffs emphasize that the elements of a fraud claim under Georgia law include not only causing one to act, but also causing one to refrain from acting. The elements of common law fraud in Georgia are (1) a false representation; (2) scienter; (3) an intent to induce the party alleging fraud to act or to refrain from acting; (4) justifiable reliance; and (5) damages. <u>Crawford v. Williams</u>, 375 S.E.2d 223, 224 (Ga. 1989). In limited circumstances, fraud can be based on an omission rather than a false representation. See <u>Reeves v. B.T. Williams & Co.</u>, 127 S.E. 293, 295 (Ga. 1925); <u>Miller v. Lomax</u>, 596 S.E.2d 232, 238

16

(Ct. App. Ga. 2004); see also Seckinger-Lee Co. v. All-State Ins. Co., 32 F. Supp. 2d. 1348, 1353 (N.D.Ga. 1998).

While it is true that a fraud claim may lie where the fraud induced inaction, a plaintiff must nonetheless also be able to show that the fraud caused the damages the plaintiff seeks to recover. As Mack underscores, Georgia law does not recognize a claim for fraud when the plaintiff asserts that he refrained from purchasing stock in reliance on the fraud. This holding, rendered in an individual action brought under Georgia law, applies directly to the plaintiffs' claim that they refrained from exercising their stock options based on the defendant's failure to disclose the existence of the conflict of interest that permeated its investment advice. With respect to the plaintiffs' claim that they refrained from selling WorldCom securities and diversifying their portfolio, there is no reason to believe that Georgia courts would distinguish between refraining from purchasing stock and refraining from selling stock. Thus, while as a general matter it may be possible for a plaintiff to state a claim for fraud when he refrained from acting in reliance on the fraud, in the context of securities traded on the open market, plaintiffs will not be able to state a claim based on a theory that they refrained from acting since they will be unable to show that they suffered damages in those circumstances.

## Conclusion

The defendant's motion to dismiss is granted. The Clerk of Court shall close the case.

DATED: New York, New York
March 22, 2006

*[signature]*
DENISE COTE
United States District Judge