```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
IN RE WORLDCOM, INC. SECURITIES         :
LITIGATION                              :
                                        :           02 Civ. 3288 (DLC)
This Document Relates to:               :
ALL ACTIONS                             :           OPINION and ORDER
                                        :
---------------------------------------- X
```

Appearances:

For Petitioner UBS Financial Services, Inc.:
Arthur W. Hahn
Christian T. Kemnitz
Michael J. Lohnes
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois  60661

Scott A. Resnik
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022

For Respondents Howard Gimbel and Marvin Davis:
Harold C. Hirshman
Sonnenschein Nath & Rosenthal LLP
7800 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606

DENISE COTE, District Judge:

   Howard Gimbel ("Gimbel") and Marvin Davis ("Davis") have moved for reconsideration of a decision entered on July 5, 2007, which barred them from arbitrating claims against UBS Financial Services Inc. ("UBSFS") to the extent that those claims rest on transactions in WorldCom options or other WorldCom securities.

Gimbel and Davis were members of the class that brought federal securities law claims against individuals and entities associated with WorldCom, Inc. ("WorldCom"), including an underwriter affiliated with UBSFS.  They did not opt out of the class action, and are bound by the release entered in the WorldCom class action.  Indeed, Davis submitted a proof of claim to and recovered from the WorldCom class action settlement fund. Gimbel and Davis also challenge, pursuant to Rule 65(d), Fed. R. Civ. P., the injunction issued against them on July 20.

The Gimbel and Davis motion does not identify any basis for reconsideration; it either raises new issues or reargues issues already litigated and lost.  At no point does it point to an argument or authority presented to this Court that was overlooked in the July 5 decision.  Therefore, the motion for reconsideration is denied.  The attack on the July 20 injunction is rejected, as the injunction fully complied with the requirements of Rule 65(d).

BACKGROUND

On June 22, 2006, Gimbel and Davis commenced an arbitration against UBSFS before the Chicago Board Options Exchange to recover losses they had incurred in trading WorldCom securities. UBSFS, which was formerly known as Paine Webber, Inc., had served as their broker.  They claimed that they should have been advised to diversify their holdings instead of advised to sell

naked put options on WorldCom stock.[1]  UBSFS raised as an affirmative defense the claimants' failure to opt out of the WorldCom class action, and on May 11, 2007 requested an injunction barring the arbitration pursuant to the judgment entered in the WorldCom securities class action.  Pursuant to a scheduling order, Gimbel and Davis submitted their written opposition to the UBSFS request on June 1.[2]  It consisted of ten single-spaced pages and attachments.  They also filed an unauthorized sur-reply on June 19.  Counsel were heard at a conference held on June 22, and an Opinion of July 5 granted the request for an injunction.  That Opinion is incorporated by reference, and familiarity with it is assumed.  <u>In re WorldCom, Inc. Sec. Litig.</u>, No. 02 Civ. 3288 (DLC), 2007 WL 1946685 (S.D.N.Y. July 5, 2007)("July 5 Opinion").[3]

The July 5 Opinion required UBSFS to submit its proposed injunction upon notice to the claimants not later than July 13.

---

[1]  There is no dispute that the options were on WorldCom stock, although the arbitration claim did not identify the issuer of the securities for which the options were sold.

[2]  The June 1 submission repeatedly returned to its contention that neither Davis nor Gimbel held WorldCom debt, basing its opposition to the injunction largely on that purported fact. When UBSFS uncovered the fact that Gimbel had bought WorldCom debt, his counsel volunteered at the June 22 conference that, while it "may be perfectly correct" that Gimbel would not have a claim, Davis could nonetheless proceed with the arbitration.

[3]  A June 28 submission from Gimbel and Davis was rejected for raising new issues beyond the scope of the supplemental post-hearing submissions which the Court allowed the parties to make. July 5 Opinion, at *4 n.8.

On July 18, the claimants commented on the language of the proposed injunction.[4]  A permanent injunction was issued that day ("July 20 Order").  In brief, the July 20 Order enjoined the claimants from arbitrating against UBSFS or its affiliates claims arising out of claimants' transactions in securities issued by WorldCom as well as options based on the value those securities.

On July 25, the claimants filed a motion for reconsideration.  UBSFS has opposed the motion, and the claimants filed their reply on August 20.

DISCUSSION

I.   Motion for Reconsideration

The standard for a motion for reconsideration is strict, and "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Trans., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided," nor may the moving party "advance new facts, issues or arguments not previously presented to the Court." Shamis v. Ambassador

---

[4]   To the extent the claimants also presented a due process argument in opposition to the entry of an injunction, that argument was untimely and accordingly ignored.

4

Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999).  The decision to grant or deny the motion is within the sound discretion of the district court.  See Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999).

Many of the arguments that Gimbel and Davis raise in the motion for reconsideration present new theories and issues that they did not raise in their June 1 and 19 submissions or at the June 22 conference.  These include arguments premised on (1) a violation of their due process rights, (2) the doctrines of claim preclusion and res judicata, (3) the options having been issued by the Chicago Board Options Exchange as opposed to WorldCom itself, (4) the fact that there was no recovery for WorldCom securities sold before January 28, 2002,[5] and (5) a change in the terms of the release given by the class for claims against the Underwriter Defendants.

Other arguments raised by Gimbel and Davis simply repeat arguments considered by the Court and addressed in the July 5 Opinion without pointing to any authority or argument made by the claimants which the Court overlooked.  Indeed, the motion does not cite to any portion of the claimants' pre-hearing

---

[5]   In fact, as a result of objections raised by class members at the final fairness hearing on the WorldCom settlements, those who sold WorldCom securities during the class period but before January 28, 2002 did recover approximately ten percent of the Exchange Act portion of the settlement fund.  In re WorldCom, Inc. Sec. Litig., 388 F. Supp. 2d 319, 347 (S.D.N.Y. 2005).

submissions to the Court to justify this motion for reconsideration.

Only one argument deserves additional discussion. The claimants suggest surprise with the analysis in the July 5 Opinion of their "factual predicate" argument. The Opinion explained that the scope of a settlement release is limited by, among other things, the requirement that the released conduct arise out of the identical factual predicate as the settled conduct. In re WorldCom, Inc. Sec. Litig., 2007 WL 1946685, at *6. It found that requirement met here, and as an example, described a strategy of selling WorldCom puts, which was the trading in which the claimants engaged, as reflecting a belief that the prices of the underlying security would rise or remain stable. It observed that such a belief would be based on the same publicly disclosed information about WorldCom on which the class action proceeded. Id.

The claimants contend that the Court's example misapprehends the theory of their claim. The claimants argue that the theory behind their arbitration claim is that an unhedged option strategy is too risky whatever the underlying stock. First, there should have been no surprise by the July 5 Opinion's discussion of what a sale of puts generally reflects; the Court outlined that same reasoning at the June 22 conference and claimants' counsel agreed at that time that the Court had

6

correctly described the way a sale of puts operates.  Second, it is unnecessary in any event to pin down the particular aims of a class member's investment strategy to decide whether the trading in WorldCom options is properly considered to share the same factual predicate.  The claims that Gimbel and Davis bring are claims based on recommendations to invest in options on WorldCom stock, and they seek losses arising from those investment decisions.  The prices of those options moved in relation to the prices of the underlying stock, which in turn responded to the public disclosures that were at the heart of the WorldCom class action.  This is sufficient to create the necessary identity in the factual predicate for the arbitration claims and the class action.

In their reply brief, Gimbel and Davis essentially admit that they are presenting new arguments not previously raised, and seek to justify that course with the following reasoning: They did not expect that the Court would agree with UBSFS and bar the arbitration of their claims based on trading in WorldCom options, and therefore only confronted that possibility after the Court had ruled against them.  They describe the injunction as an unconstitutional act that erases their claim without compensation, fair notice or a hearing.  This reasoning fails to save the claimants from the application of the law governing the scope of a reconsideration motion.  Gimbel and Davis had notice

7

of the UBSFS application, and an opportunity to be heard in writing and orally before the Court ruled.  Having lost, they are not entitled to another bite at the apple to raise a set of new arguments that they wish they had articulated the first time around.[6]

II.  Rule 65

The claimants contend that the injunction violates Rule 65 because an injunction cannot incorporate by reference the reasons for the injunction set forth in another document.  The July 20 injunction stated in pertinent part that, "[f]or the reasons set forth in the Memorandum Opinion and Order of this Court filed on July 5, 2007," Gimbel and Davis were permanently enjoined from bringing:

> any claim, cause of action, or demand of any kind or nature whatsoever, at law or in equity, in any legal action or alternative dispute resolution proceeding, including in Arbitration No. 06 NM 001, currently pending before the Chicago Board Options Exchange, against UBSFS . . . based upon, relating to, or arising out of, in any way, Claimants' transactions, investments, or holdings (including, but not limited to, purchases, sales, exercises, and decisions to hold) in securities issued by WorldCom, as well as options or derivatives based on the value of securities issued by WorldCom, from the beginning of time until September 21, 2005, including without limitation all claims arising out of or relating to

---

[6]   It is of course a matter of rhetoric and not fact that they were deprived of the claim "without compensation."  As class members, both Gimbel and Davis had a right to opt out if they wished to pursue their claims in arbitration.  They chose not to opt out and Davis submitted claim forms and recovered money as part of the settlement of the WorldCom class action.

>suitability, churning, the failure to supervise,
>violations of NASD rules, violations of federal or
>state securities laws, breaches of common law or
>statutory duties, or improper concentrations.

Rule 65 mandates that "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ." F. R. Civ. P. 65(d).  "[U]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law."  <u>Peregrine Myanmar Ltd. v. Segal</u>, 89 F.3d 41, 51 (2d Cir. 1996).  "To comply with the specificity and clarity requirements, an injunction must be specific and definite enough to apprise those within its scope of the conduct that is being proscribed."  <u>S.C. Johnson & Son, Inc. v. Clorox Co.</u>, 241 F.3d 232, 240-41 (2d Cir. 2001) (citation omitted).

The July 20 Order complied with Rule 65 because it incorporated the July 5 Opinion by reference only to explain the reasons for the injunction, and not to describe the particular enjoined acts.  Rule 65 is concerned with vagueness insofar as a vague injunction poses "the threat of a contempt citation for violation of an order so vague that an enjoined party may unwittingly and unintentionally transcend its bounds."  <u>Sanders v. Air Line Pilots Ass'n, Int'l</u>, 473 F.2d 244, 247 (2d Cir.

9

1972) (citation omitted). The July 20 Order was clearly labeled "Permanent Injunction Order" and described, in considerable detail, the prohibited acts. There was no risk that Gimbel and Davis might risk a contempt citation for doing anything other than what was described in the Order.

Moreover, Rule 65(d) prohibits an enjoining court from describing "the act or acts sought to be restrained" "by reference to the complaint or other document." The Rule does not make a similar prohibition concerning any of its other requirements. That is, the Rule does not prohibit the court from describing "the reasons for [the injunction's] issuance" by reference to any extrinsic document. Had the drafters of the Federal Rules of Civil Procedure intended to prohibit an explanation of the reasons for an injunction by reference to an earlier opinion, they surely could have done so.

CONCLUSION

Davis and Gimbel's motion for reconsideration is denied, and their Rule 65(d) challenge to the July 20 Order is rejected.

SO ORDERED:

Dated:  New York, New York
        October 16, 2007

                                    _____
                                          DENISE COTE
                                    United States District Judge

10